UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WENDY L. MEADE, a/k/a
WENDY M. SOUTH,

        Plaintiff,

v.                                          Case No. 8:12-cv-00287-T-17MAP

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff, for the second time, seeks this Court's review of the Commissioner's decision denying her claim for disability insurance benefits ("DIB"). Like before, the Plaintiff argues that the Administrative Law Judge ("ALJ") erred when evaluating the medical opinions of Plaintiff's physicians and in assessing Plaintiff's residual functional capacity ("RFC"). Because I find the ALJ failed to abide by the Court's prior remand order, I recommend the matter be remanded again for further administrative proceedings.[1]

*A. Background*

Plaintiff has previous work experience as a cashier, receptionist, office assistant, and bank teller. She initially filed for DIB on April 26, 2006, alleging disability beginning on

---

[1] The matter is referred to me for a report and recommendation pursuant to Local Rule 6.01(c)(21).

January 21, 2006, due to panic attacks, panic disorder, right knee problems, and bilateral carpal tunnel syndrome (R. 112, 33-34, 125).  An ALJ denied her claim at step four of the sequential analysis finding she could perform her past relevant work.  She then sought judicial review with this Court, which remanded the matter for further administrative proceedings.  *See Wendy L. Meade v. Michael J. Astrue*, Case No. 8:09-cv-2027-T-27AEP.  That decision is relevant because the issues raised here are the same ones the Court directed the Commissioner to consider administratively.

In its Order remanding the case for further administrative proceedings, the Court noted its specific concerns: (1) the ALJ's failure to resolve any inconsistencies in the evidence and explain her basis for not crediting any of Dr. Nardone's conclusions (R. 509); (2) further evaluation to Dr. Corzo's findings and a clear statement as to the weight afforded to his assessment (R. 510); (3) consideration of Dr. Hodan's conclusions regarding Plaintiff's reliability and need for a low stress work setting, as well as an indication as to the weight given to those conclusions; and (4) the reasons for discrediting Dr. Jones's report.  The Court instructed the Commissioner to further consider Dr. Nardone's, Dr. Hodan's, and "all other medical evidence appropriate for consideration, including Dr. Jones's report." (R. 512).  Consequently, the Appeals Council vacated the ALJ's previous decision and remanded the case to an ALJ for further proceedings consistent with the Remand Order (R. 522).

After a second administrative hearing (by then the Plaintiff was 39 years old), the ALJ found the Plaintiff suffered from severe impairments: panic disorder, dysthymic

2

disorder, adjustment disorder, and Osgood-Schlatter Disease with right knee pain.  None of her impairments met the listings, although the ALJ acknowledged the Plaintiff's treating physician, Dr. Jones, had opined that Plaintiff's panic disorder "reflects limitations that would meet the listing level severity" but gave the opinion little weight determining that his opinion was "inconsistent with his own treatment records, as well as the evidence of the record as a whole." (R. 401). The ALJ found Plaintiff had mild restrictions in the activities of daily living and moderate difficulties in social functioning, concentration, persistence, and pace (R. 400-01).  From all this, the ALJ concluded Plaintiff had the residual functional capacity ("RFC") to perform "less than a full range of light work. Specifically, the [Plaintiff] could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk up to six hours in an eight-hour work day; sit up to six hours in an eight-hour work day; push and pull unlimitedly consistent with light work; never climb ladders, ropes or scaffolds; no crawling; occasionally climb ramps and stairs; occasionally balance, kneel, stoop, and crouch; and [was] restricted to unskilled work with no interaction with the general public and only occasional interaction with coworkers and supervisors." (R. 401-02).  Thus, Plaintiff could not perform her past relevant work.  At step five of the analysis, and with the assistance of a vocational expert, the ALJ found the Plaintiff could make a successful adjustment to other work at the light level and the sedentary level in the national economy (R. 407).[2]  As such, the ALJ found the Plaintiff was not disabled (R. 407).  The Appeals

---

[2] The vocational expert testified that given the Plaintiff's age, education, work experience, and RFC, the Plaintiff could perform the requirements of light, unskilled occupations such as a copy machine worker, mail clerk, and office helper (R. 407). The

3

Council did not assume jurisdiction. Therefore, the ALJ's decision became the final decision of the Commissioner. The Plaintiff then filed this appeal.

*B. Standard of Review*

To be entitled to disability insurance benefits, a claimant must be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (i.e., one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart

---

vocational expert also opined that even if Plaintiff's RFC were further reduced to a sedentary level, she would still be able to perform the occupation of a ticket checker (*Id.*).

4

P; (4) whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520. A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert,* 482 U.S. 137 (1987); 20 C.F.R. § 404.1520(f).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389 (1971). The ALJ's factual findings are conclusive if "substantial evidence" consisting of "relevant evidence as a reasonable person would accept as adequate to support a conclusion" exists. *See* 42 U.S.C. § 405(g); *Keeton v. Department of Health and Human Services*, 21 F.3d 1064 (11th Cir. 1994). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Further, the Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he/she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066; *Jamison v. Bowen*, 814 F.2d 585 (11th Cir. 1987) (remand for clarification).

*C. Discussion*

The Plaintiff advances the same two arguments she made in her previous appeal: the ALJ failed to properly evaluate the medical opinions of Plaintiff's treating and examining mental health physicians; and, the ALJ erred in assessing Plaintiff's RFC. After reviewing the record, I find the ALJ failed to address several inconsistencies in the medical record,

5

some of which the Court specifically requested the ALJ address in its Remand Order.

### *1. evaluating the medical opinions as directed*

In a March 2007 report, Plaintiff's treating physician, Dr. Nardone, opined that Plaintiff was unable to maintain regular employment secondary to the severity and recurrence of her panic disorder. On remand, the Court directed the Commissioner to consider this opinion and, if rejected, explain the reasons for the rejection. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (the testimony of a treating physician is to be given substantial or considerable weight unless "good cause" is shown to the contrary). The Plaintiff argues that the ALJ failed to adhere to the Remand's directives. The Commissioner's rebuttal is more difficult to discern. Essentially, the Commissioner tacitly recognizes the ALJ failed to specifically address Dr. Nardone's March 2007 opinion, but he excuses the omission because the March 2007 report post-dated Plaintiff's last date insured (December 31, 2006). In short, the ALJ did not have to discuss it because it was too late to be relevant.

The Court's orders are not to be treated so lightly. "When specific instructions have been provided in a remand order, whether that remand order is issued by the Appeals Council or the federal court, the ALJ *must* do as it instructs."[3] *Russ v. Astrue*, No. 3:07-cv-1213-J-MRC, 2009 WL 764516, at *6 (M.D. Fla. Mar. 20, 2009)(citing *Warren-Ward v. Astrue*, No. 1:07-cv-811-TFM, 2008 WL 2397390, at *3 (M.D. Ala. June 10,

---

[3] The Appeals Council's order remanded the case to the ALJ for further proceedings consistent with the Remand Order (R. 522).

2008))(emphasis in original); *see also Gibbs v. Barnhart*, 130 Fed. Appx. 426, 430 (11th Cir. 2005) ("Social Security regulations provide that, in the event the Appeals Council orders a remand, the ALJ 'shall initiate such additional proceedings and take such other action . . . as directed by the Appeals Council in its order of remand.'"). "An ALJ commits legal error by not following the mandate of the court. *Id.* (citing *Bolen v. Astrue*, No. CA07-0516-C, 2008 WL 694712, at *3 (S.D. Ala. Mar. 12, 2008).

The Court's Remand Order was specific:

> [T]he ALJ was required to resolve any inconsistencies in the evidence and explain her basis for not crediting any of Dr. Nardone's conclusions. The ALJ determined that Plaintiff can perform a restricted range of light work, ignoring Dr. Nardone's opinion that Plaintiff is unable to maintain regular employment due to the severity of her panic disorder. As such, the ALJ's decision is not supported by substantial evidence.

Although the ALJ made extensive findings related to Dr. Nardone's medical records and found parts persuasive, the ALJ failed to address the Court's core concern – the physician's opinion that Plaintiff could not maintain regular employment due to the severity of her panic disorder. In fact, and contrary to the Court's express direction, the ALJ did not mention the March 2007 report nor Dr. Nardone's specific opinion. And the Commissioner's justification – that March 2007 report is not relevant as it post-dates the Plaintiff's last date insured – counters the circuit's longstanding position for evaluating such evidence. *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) (holding that "a treating physician's opinion is still entitled to significant weight notwithstanding that he did not treat

7

the claimant until after the relevant determination date" nor "does [it] render his medical opinion incompetent or irrelevant.")(*superseded by statute on other grounds*); *Accord Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981) (same); *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987) (noting that medical evaluations made after a claimant's insured status expires may be relevant to prove a previous disability); *Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990) (citing with approval the rule that medical evaluations made after a claimant's insured status expires are relevant); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (same); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225-26 (7th Cir. 1984) (holding that the Secretary erred in refusing to consider medical records dated after a claimant's insured status expired); *Martonik v. Heckler*, 773 F.2d 236, 240-41 (8th Cir. 1985) (same).

The ALJ's treatment of Dr. Nardone's opinions are not the only deficiency. Contrary to the remand instructions, the ALJ also failed to properly evaluate the opinions of Dr. Jones and Dr. Hodan, whose opinions lend support to Dr. Nardone's conclusion that Plaintiff is unable to maintain regular employment. For instance, Dr. Jones opined in September 2006, that the claimant had marked loss in most areas regarding the ability to understand, carryout, and remember simple instructions; make work related judgments at the unskilled level; respond to coworkers and supervisors; and deal with routine changes. Additionally, Dr. Jones found Plaintiff was markedly impaired especially when stress increases, in social functioning, and in interacting with the public. The ALJ, however, claimed this assessment was inconsistent with Dr. Jones's own treatment records. Thus, the ALJ gave little weight

to Dr. Jones's opinions. In making her determination, the ALJ stated Dr. Jones's had only assessed that Plaintiff had GAF scores of 60 to 75,[4] which was inconsistent with his September 2006 statement concerning Plaintiff's marked losses. Yet the ALJ failed to mention that Dr. Jones had also accessed GAF scores reflecting more serious impairments as well. In September 2006, Dr. Jones reported that while Plaintiff's GAF score had been at 60 over the last year, her GAF score had decreased to 50 in the last six months.[5] The ALJ failed to mention this GAF score when she opined that Dr. Jones had accessed GAF scores of only 60-75. Picking favorable evidence and ignoring unfavorable evidence improperly skews the administrative record. *See McCruter v. Bowen*, 791 F.2d 1544 1548 (11th Cir. 1986) ("It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole.").

Dr. Hodan, who was a consultative examiner, opined that Plaintiff becomes highly

---

[4] "The [GAF] Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations." *Mathis v. Astrue,* No. 3:06-cv-816-J-MCR, 2008 WL 876955, at *7, n. 4 (M.D.Fla. Mar. 27, 2008) (unpublished) (citing Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) at 32); *Wilson v. Astrue*, 653 F. Supp. 2d 1282, 1284 (M.D. Fla. 2009).

[5] A GAF score of 41-50 describes "serious symptoms" and includes "serious impairments in the social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships." *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000); *Wind v. Barnhart*, 133 F. App'x 684, 687 (11th Cir. 2005).

anxious upon leaving the house, and although Plaintiff's cognitive abilities were retained, she required significant dosages of Xanax to get her through the day, a consequence that impacted her reliability. Dr. Hodan stated Plaintiff would do best in a low stress work environment and was capable of developing smooth relationships with others; however, she would not likely be a reliable worker because of her anxiousness when leaving her house. Although the ALJ gave significant weight to Dr. Hodan's opinion, she found Dr. Hodan's assessment of Plaintiff's RFC vague and unquantified. Nonetheless, the ALJ concluded limiting Plaintiff's interaction with the public and coworkers appropriately reduced her potential attendance issues related to stress in the work environment. In reaching this conclusion, the ALJ failed to address Dr. Hodan's reason for questioning Plaintiff's lack of reliability – her agoraphobia.[6] The medical evidence confirms the Plaintiff's agoraphobia and her fear about leaving the home.[7] The ALJ must consider Plaintiff's medical conditions as a whole, which includes Plaintiff anxiousness in leaving her home. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir.1987) (explaining that the ALJ must consider the

---

[6] Agoraphobia is a "[F]ear of going into open spaces and of entering shops, restaurants, or other public places . . . The thought of visiting a public place or mixing with many other people fills suffers with such dread that they avoid going out as much as possible." *See* The American Medical Association Encyclopedia of Medicine, 76 (Charles B. Clayman, MD ed., 1989).

[7] Dr. Nardone and Dr. Lavasseur also diagnosed Plaintiff with panic disorder with agoraphobia (R. 266, 360). Despite these findings, the ALJ only addressed Plaintiff's subjective complaints about her agoraphobia. Because the ALJ found the Plaintiff was not credible, she rejected Plaintiffs complaints that she had difficulty leaving her home due to her severe panic attacks. The ALJ failed to address whether the objective medical evidence was consistent with Plaintiff's subjective complaints.

claimant's "medical condition taken as a whole" at steps three, four and five of the sequential process). Remand is required when the ALJ "fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." *Vega v. Comm'r of Soc. Sec.,* 265 F.3d 1214, 1219 (11th Cir.2001). As such, I find that remand is needed in order to fulfill the obligations outlined in the previous Remand Order as well as this Order to properly evaluate Dr. Nardone, Dr. Jones, and Dr. Hodan's medical opinions.

    *2. Assessment of Plaintiff's RFC*

Because I find remand is appropriate due to the ALJ's failure to follow the Court's instructions to properly evaluate medical opinions, it is unnecessary to address the Plaintiff's remaining contention that the ALJ erred in accessing the Plaintiff's RFC.

    *D. Conclusion*

For the reasons stated, I recommend that judgment be entered for the Plaintiff and the matter remanded for further administrative proceedings consistent with this report.

IT IS SO REPORTED at Tampa, Florida on January 23, 2013.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

11

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc:   The Honorable Elizabeth A. Kovachevich